95-192 Northwell Health v. Group Hospitalization Good morning. May it please the Court, my name is John Horvath. I represent Northwell Health and I've reserved one minute. Three issues before your honors. First is personal jurisdiction. This particular case involves medical services provided in New York by Northwell to 205 insureds of the defendants. And that occurred between the beginning of 19 to the end of 22. Northwell built... Before you do personal jurisdiction, can you do subject matter jurisdiction? And I just want to ask if you have any... We got a letter from your adversary on the citizenship of GHMSI and wanted to see if you had any... It appears that they've confirmed that this Court has subject matter jurisdiction by diversity. There is complete diversity. The matter in controversy exceeds $75,000. The claim is for $2.75 million. Two of the entities are federal corporations. How does that impact the analysis? I believe counsel addressed that and I didn't find any law to contradict their analysis of that particular issue. You want to take on the statutory language there or just... I mean, we don't have a case that says that, right? There's a Fourth Circuit case. Correct. So it seems to me there are a handful... So what I think you're saying is you suggest that we adopt the reasoning of the Fourth Circuit case as opposed to some other theory? Yes, Your Honor. We found no other case that had a different theory and the theory of the Fourth Circuit seemed correct to us. What about the localization test? Is that something that we need to be worried about? It didn't appear to me that that was something to be concerned about. I also want to thank the students for being here from the Laboratory Finance School. We're thrilled to have you. You guys know you should be at the top of your game because we have young people watching. You should have told me that first. So 205 insureds, importantly for personal jurisdiction, 180 of one of those out of the 205 are New York residents. The district court's decision at page 3, the appendix is 49, reiterated that allegation. She said she accepted it. But then in the decision at page 17, she said the exact opposite, that there was no allegations of being insured being a New York resident. And so there's a direct conflict within the decision itself where she says she accepts the fact of 181, but then says there is no such allegation. As Your Honors know, the Hirsch case from the Ninth Circuit is right on point there. There was one insured in the Forum State. How many is enough under your test, then? Clearly one, according to Hirsch. Okay. Sorry. Because the insurer is reaching out to the Forum State, insuring somebody within the state in the conflict, the dispute, arises out of that insurance relationship. Here we have that happening 181 times. So under that theory, then, every insurer participating in the network offering nationwide coverage would be subject to personal jurisdiction across the country. Is that your position? Well, remember, here there's 181 New York residents that are being insured by the D.C. arm of it. Right. But if one is enough, then, in theory, any time there's a claim somewhere in a network, in the Blue Cross network, that would be enough. I agree. That if an insurer from D.C. insures a worker. I'm not saying that as a statement. I'm asking you if that's your position. It is my position. That if an insurer from an out-of-state insures a New York resident, and a dispute arises out of care in New York for covered services under that insurance relationship, there is specific jurisdiction. Does it matter how they became New York residents or what the D.C. what the defendant's knowledge of? They're insuring them in D.C. and then they happen to move to New York or they're visiting fortuitously. Does any of that matter? I don't think it does, because there's an insurance relationship whereby they financially benefit from the connection with that New York resident. And the relationship is bind between D.C. and New York. Services provided in New York. Dispute arises in New York. They need to come to New York to resolve that dispute. That is fundamental fairness. Don't we have a case law that says that you can't be hailed into court solely because of a choice of a third party? Right? I mean, like how? It certainly, I think, matters in terms of some of your contract theories about whether or not they reasonably knew or how it came to be that they ended up having a connection to somebody in New York. I agree that if there's a New York insurer and a New York resident insured and the New York insured goes to California on vacation and is injured and needs emergency care and there's no other connection with California other than the insured's conduct going out there and getting injured, I would agree that that would be a very difficult personal jurisdiction case, but that is clearly not our case. So you're saying that the defendants 100% knew when entering into the contract with Empire that there were New York residents? Well, remember, they are acting within D.C., dealing with corporate headquarters which have outposts, for example, not surprisingly, in New York. And so they're insuring New York offices with New York residents and they're directing them, remember, under this blue card program. Do we know under 81 insurers where New York residents were insured that way or whether they were started out in the D.C. area and then moved midway through the year? I mean, it might make a difference. It's not clear from the complaint, and we didn't get into discovery, but either way it seems to me that at the end of the day when these claims are arising and disputes are being held, they're New York residents, and it's undisputed that that's the case. We've alleged it. They haven't disputed it. Just your court case says they accepted it but then didn't. And I do think that's the end of the pleading case here. It's a very compelling case of personal jurisdiction, and respectfully I think on de novo review you need to reverse that. Can I ask what may be a very naive question, but please edify me. Why did Northwell sue Empire? Because the 2008 Provider Agreement, in our reading of it, obligates Empire to pay Northwell only for Empire insureds. For the balance, it says the payor is the Blue Cross affiliate of the insured. So it defines payor to include Blue Cross affiliates, and therefore the only obligor for these particular services is the defendant here. We could not have sued Empire. And when the brief says we could have or should have, that's just an erroneous interpretation of the contract on the merits when we get there. But certainly we've pled that Empire is not responsible. We pled only they're responsible, and therefore that needs to be accepted as true, obviously, at the pleading stage. And whatever inferences need to be drawn in my favor should be, and I don't think they were. Okay, so the defendants obviously marshal a bunch of cases that reach a conclusion that isn't ideal for you all. Can you tell me why you think this case is different? Is it on the personal jurisdiction question? Yes. So I think all of those cases fall into the category of what I said previously in my hypothetical of New York, New York, and then traveling on vacation to California. Certainly when one insured goes off and does that and the New York insurer has no connection with California, the dispute shouldn't be resolved there. It should be resolved back in New York. Here, again, it's completely and totally different. A supermajority of the claimed dispute arises because of New York residents. What's the basis on which you want us to distinguish the cases? I mean, I thought earlier you were saying it's just participation in the program and that's enough, but that wouldn't then distinguish the cases. You're now turning back to the number of the 180 residents in New York. I think the ultimate focus is on what the defendants did and how they benefited from the forum state. Here, in 181 cases, they benefited from insuring New York residents. They directed those residents to go to Northwell in New York for covered services. They then processed those claims, paying some but rejecting all. And our position is the dispute— What you just said, that would be true if one of the insureds traveled on vacation to New York and was injured and then looked on the website for a network provider. It feels a little like you're moving back and forth between what the relevant factors are. It would be helpful to pin down the significance of the residents versus the significance of just being in the association, the significance of having the ability for insureds to search for in-network providers. Do you need all of that? Do you need any of that? From my perspective, there is all of that, but the direct conduct of the defendant is primary here, in my mind, primary here because they insured 181 New York residents. And again, the cares in New York— But so that goes back to the— Both asked the question of does it matter if they were insured in D.C. and then just sort of fortuitously moved to New York and the defendants had no awareness of that. Does any of that matter? I think it does. And you think it does? I do. So for the 181, I think there's a clear and compelling case alone for that, for personal jurisdiction. I thought you just said—I'm sorry. I thought you said earlier that you didn't know how they came to be New York residents. You didn't know when they were doing it, under what circumstances. Is that right? Okay, but if that's the case, and we don't know the scenario, and you think the scenario is relevant, how are we supposed to decide this? I think you sound like you're talking about something other than just the mere fact that they got services in New York, but we seem to be going back to a place where it's because they got services in New York. I think it's two things, Ronna. I think it's the 181 New York residents that they insure and financially benefit. That in and of itself creates personal jurisdiction when the dispute arises from that relationship. In addition to that, uniquely to this case, we have a blue-card national program where if there is a D.C. resident, they're told, if they need to, come up to New York, here's an I.D. card, go to Northwell and get services. And apparently, in a small minority of the cases, that occurred. And so we have both. We have a contractual relationship between the defendant and New York residents, 181 of them, and then we have other instances where a small minority have come to New York and taken advantage of the blue-card program. Both of those support personal jurisdiction in this unique case. I'm way over time, and I'm not sure if there's any questions with respect to the pleading questions, with respect to agency. Again, in summary, it looked to me that the district court credited all of the allegations related to agency, and there was about 50 separate paragraphs. She summarized it. But then when she got to the actual analysis, she said there were none. That is error, particularly on de novo review, and respectfully, that needs to be reversed. Compounding that problem, we sought to amend after the ruling so that we could support any of the perceived deficiencies. And without giving us one chance, she denied that on a pre-motion letter. And that's an abuse of discretion in this circuit. On the ratification argument, you concede it's forfeited and that we should forgive the forfeiture or that you made the argument but you called it something else? We made the argument, and we didn't below use the technical term ratification. But we made the argument that they accepted the benefit of this contract, the in-contract rates, and therefore partially performed and therefore ratified the contract. It really is a second cousin, maybe a first cousin, to manifest intent, which was clearly argued below. And for either of those two reasons, there would be agency here, and it was error not defined below. And if I just may follow up on that, can you articulate what you imagine to be a legal difference between exercising obligations under the membership agreement and equating to taking on the obligations of the contract between Empire and Northwell? You're going to have to check. Sure. I mean, so in your ratification theory, you are suggesting that they took on the obligations of the contract between Empire and Northwell. Yes. Why couldn't it be easily understood as exercising its obligations under the membership agreement it has with somebody completely different? And is there a legal significance to that difference? No, I understand. So they took advantage of the contract rates in the Empire provider agreement systematically and therefore benefited from that aspect of the contract and therefore ratified it, manifested clearly an intent to be bound by it. But then when they didn't want to follow it, they breached it and failed to pay all. They elected to pay some. And so it's the financial economic dispute is centered on the provider agreement. The agreements bind amongst the various Blue Cross slash Blue Card members. That requires them to effectively and efficiently implement these national programs of which Blue Card is indisputably one. And therefore, they agreed that the host, for example, the empires of the world would negotiate with the providers in that network on their behalf so that they could get those benefits. And so we're a third-party beneficiary to those agreements. Okay. Just one more factual question.  I think that the first provider agreement was in 2000. Is that right? Yes. I don't think the complaint gives sort of a sense of course of dealing between 2000 and 2018. What was happening? Well, what was happening is things were being processed according to the 2000 provider agreement, which says that Northwell needs to provide care to the defendant's insureds when they come and present with a card. And those claims were being processed by the defendant through Empire because the 2000 agreement says two important things. One, Northwell needs to provide care at the contract rates to the defendant's insureds. But two, the processing of those claims would go directly through Empire unless Empire notified Northwell otherwise. And so that was working. But then in 2008 it remained that Northwell needed to provide services to their insureds. But the payor definition came in, which said now Empire is only responsible for their insureds and the Blue Cross affiliates are the payors responsible for their insureds. And that, according to the complaint, was being followed and processed until the dispute, which arises here in 2019, spanning through 2022. Is that helpful? Okay. Thank you. I appreciate it. Thank you, counsel. We'll hear from counsel for appellees. Thank you, Your Honor. Misha Zaitlin for the defendants. Briefly on diversity of jurisdiction, I think the best way to resolve that issue is to just follow what the Walgreens case said out of the Northern District of Illinois. The Walgreens case applied the Fourth Circuit case, which I think is indisputably textually correct. There are other bases that we invoke at the end of the letter that would allow a finding of citizenship in D.C., but just following what the Walgreens case said, applying the clearly correct Fourth Circuit decision, I think, is the most straightforward way to pass through the diversity of jurisdiction issue. If there are no questions on diversity of jurisdiction, I found it, frankly, pretty astounding that my friends said that they could not have sued Empire. The contract that they signed says that, and this is CA-6, no person, entity, or organization other than Empire shall be accountable or liable under this contract. Then on CA-19, in paragraph K, it specifically addresses the scenario, which is providing services to the customers of out-of-state blues. It says Northwell will submit claims for services rendered to customers of those out-of-state blues directly to Empire and will be reimbursed by Empire. It is crystal clear from the unambiguous contract that they signed, they're a sophisticated entity, that the redress here for any underpayment under K on page 19 should have been against Empire. You know, I take counsel at his word that they read this contract very bizarrely in this way, but the contract is crystal clear. Empire owes them any money that is due to them under their contract with Empire, and if they didn't get enough money from Empire, they should sue Empire, and if they're right, they'll get the money. If they're wrong, they won't get the money. Now, there are two ways to affirm the – Wouldn't Empire then just sue you? If they defeat Empire and the court that they sued Empire and concludes that Empire owes them more, then Empire, being an independent member of the blue card network, would deal with us in some way, whether it's a lawsuit, whether it's arbitration, whether, you know, other ways. But in any event, the only contract here is the one that they entered with Empire. If they haven't gotten enough money under the contract, then Empire will pay them, and then what that means for our relationship with Empire, that's our business, and Empire's business, that's not their business. And then, of course, this case can be addressed either on the merits or on personal jurisdiction. Most courts dispose of these kind of lawsuits brought by providers in other states against out-of-state insurers on personal jurisdiction grounds. The leading case on this from the district court level is the St. Luke's case out of the southern district of Texas, and that was ostensibly relied upon by the Choice Health case in the Fifth Circuit. Well, I mean, obviously, we can look at those cases that we have, and we'll either be persuaded or not persuaded. But I'm more interested in this idea that defendants did enter into an agreement that would require them to cover care outside their zone, and that meant they had to know that there was at least a possibility that some of the care would occur outside their zone. So is there some sort of benefit between being able to offer such comprehensive coverage, and what does that do to now you claiming that you don't have a relationship with them? I mean, it seems to me that it's a bit hard to square with the product that I think you are offering, which is comprehensive coverage, right? Well, on the merits, we clearly have no relationship with them. They entered into a contract with Empire that says that Empire is the only one responsible. Now, in terms of our relationships with the states, we, like any other insurer that's part of a national network, have customers that could travel anywhere. I remember I was reading this article about this couple that went to every Cracker Barrel in America, 44 states. If they weren't insured, they could have gotten sick in any of those states. But unlike the Texas cases and the Cracker Barrel travelers, your clients insured 181 New York residents, and we don't know exactly the circumstances of them, but that seems to be different from a one-off travel situation. So how is that not purposeful availment? Well, as was, I think, discussed in the colloquy with my friend, they don't make any allegation that we knew that these folks were in New York, that we had some special relationship with New York. These people would have been employees of D.C., Virginia, Maryland companies. The allegations here are from 2019 to 2022. Maybe those companies had stay-at-home policies during COVID. We don't know. It's their burden to plead personal jurisdiction. It seems like it would matter if – maybe you need personal jurisdictional discovery, but it seems to matter if your clients knowingly insured New York residents, and maybe they moved midyear, and then they were renewed. I don't know if the 180, what the circumstances are. It seems like nobody does. But if you are insuring New Yorkers, that seems to be utilizing the form of state, doing business, reaching out and doing business in the form of state. I respectfully disagree that whether these companies allowed their employees to have a work-from-home policy or these employees made a unilateral choice to move to New York, Pennsylvania, Alaska, wherever, that's their unilateral choice. We're licensed to do business only in D.C., Maryland, and Virginia. We do business with individuals living in those places and companies that have their principal place of business in those places. If individuals that happen to work at those companies make a unilateral decision, for example, during COVID, to go up I-95 and live in Manhattan, that's a unilateral choice. That's not us purposefully availing ourselves of the New York jurisdiction. Now, you can imagine a different hypothetical scenario. You have an insurer in Pennsylvania, and it's purposefully saying, hey, advertising to New York and saying, come with us because we provide the best network in New York, something like that. You could imagine a specific scenario where an insurer that's out of state is directing its actions in the state. But here we have just the most banal situation imaginable, which is we have out-of-state insurers that are part of a national network providing insurance coverage, group coverage to employers, and those employers have various stay-at-home policies, have various other policies that allow some of their employees to live in other states, whether it's New York, California, wherever. And in that sort of circumstance, that insurer is not purposefully availing themselves of doing business in New York in any respect. Okay. Let me ask, though. So what I think you are saying is that even if you knew that they were New York residents, like even if all of the paperwork they gave you, and now nobody does, but like if you knew, you would say that it was still not your responsibility or that you didn't avail yourself because you were protected by the relationship that you had with the employer? Yes, because the decision to move to New York was a unilateral decision made by the employees. We didn't, in that hypothetical, we did nothing to project ourselves into New York. We didn't encourage it. We didn't say we're specially good for New York residents or anything like that. The only thing we did is we did business with a company that has a work-from-home or remote work policy or whatever it is. But in any event, we submitted a declaration on personal jurisdiction. They didn't ask for jurisdictional discovery. They didn't do anything else. They rested at the motion-to-dismiss stage on their complaint. There was no allegations of any of that stuff in the complaint, and so the complaint needs to be dismissed in some future case if someone wants to make specific allegations. Can I ask? Yeah. Am I right that the claims were claims partially paid here? The allegation was that they received $1.8 million from Empire. And that was money that you transmitted to Empire pursuant to the claims file? The way that it works is that Empire pays them. We have a relationship with Empire. They have some of their insured in our area, and at the end of each month, the accounts are reconciled. But they're the ones that pay. Empire is the only one that paid them. I understand, but did you pay Empire some of the claims with respect to the New York residents? I mean, as a matter of course, it would have been the accounts would have been reconciled. Yes. So why? Sorry? Why would you pay those? Because we have an agreement with Empire that if our insureds come to them and they have a contract with a provider, we'll reimburse them and they have a similar agreement with us, and there's tens of thousands, hundreds of thousands of these contracts. We don't see – before this litigation, we didn't even see this contract. So you have an agreement with Empire anticipating your insureds needing health care in New York or the other 33 states to which you will provide coverage. Isn't that just false? That's the nature of a nationwide insurance network. Right. Why isn't that doing business, participating, availing yourself via your relationship with Empire with an entity in New York from which these claims arrive? Well, because any person that goes to any one of the 58 other states is making an individual, unilateral choice to go to that state. That's not us purposefully availing of our – Wait a minute. Didn't you purposely avail yourself of your relationship with Empire is what I think Judge Nathan is asking. Right? I mean, you voluntarily got into a relationship with Empire. Right. We joined a national insurance network. And, look, I understand – Like 34 states. Yeah. In 34 members of the national network. Look, there is a formal logic to their argument. The lion's share of the cases go our way. The consequences of adopting their position – I mean, this wolf comes as a wolf. Then every single insurer that's part of a national network, which is the way that insurance is done, then can be hauled into any state in the nation to be sued in the courts of that state. That would be a revolution in the insurance field, and that would have very significant consequences for companies that are only incorporated into business in one state or two states to then be hauled into any of the other 49 or 48 states. What if you were insuring a million New Yorkers, New York residents, for reasons that, you know, vary, but you weren't soliciting, you know, you weren't marketing in New York? Would that give rise to personal jurisdiction? Yeah, I mean, it's a pretty extreme hypothetical to test this purposeful availment. What are you doing to go into the state of New York? That's why you get to pay the big bucks. Yeah, I mean, but it's an extreme situation that is unlikely to occur, something like that. I mean, you know, the case, the choice healthcare case in the Fifth Circuit, that was 50 patients. Here we got, they're saying, 180. So is there a number? Is there a – like, you think 181 is too small? If it's 1,000, is that enough? Is it a million? I mean, at some point, are you – It depends on the facts of the case. It depends on what the insurer did, if anything, to avail itself of a different state that is not incorporated. If you've got an – like I said, I said in my hypothetical earlier, if you've got – if you're next door and you're doing something to project into a state to encourage those states' residents in particular to do business with you, that's a different case. But here we have, like, the most banal circumstance possible, and all the allegations are banal. They don't say that New York was treated differently by us than any other state, that we marketed New York differently, that anything was done differently with Empire vis-à-vis the other Blue Card members, that we did anything different from them with regard to the hundreds of thousands and millions of other providers. It's just, you know, it comes as a hypothetical, as a simple case. Is the mere fact that an insurance company joins a nationwide network sufficient to – subject to a jurisdiction in every state, and then to be sued under any one of these tens of thousands, hundreds of thousands of provider contracts that it never saw? Do you want to briefly address anything that you heard on the merits from opposing counsel? I don't know. No, happy rest of my weeks. Thank you. We'll hear about all that. Thank you. I have three quick points because I know I've gone over. The first is my brother said that my comments about who's obligated were astounding because I said Empire is not responsible for anything other than their insurance, and they're responsible for their insurance. And that's because that's what the amended provider agreement in 2008 says. He cited CA-6 and CA-19 only, and that's the 2000 provider agreement, which was amended in 2008. And specifically, if you go to that particular agreement, there's a very specific definition of payor, of which they are one of the payors. Two is he's admitted there's a relationship by and between his client and Empire. That relationship is an agency relationship because Empire is acting on their behalf for purposes of the provider agreement with Northwell, and they're in control. He's admitted they make some payments, but they refuse to make others. We need to get to the bottom of that relationship and how they could make that decision without being accountable for that decision. How could that be? They get coverage for their insurance. They make decisions, pay some but not all, but they're not accountable for their decisions. That makes honestly no sense. And he talked about at the end, this is number three and I promise, the consequence of this decision. The consequence of upholding the district court's decision is astounding. It would allow them to get full benefits for their insurers without having any accountability for what they do. They could pay or not pay. We can't sue Empire because they're only responsible for their insurers. They're not responsible for their insurers. What do we do about that? We have a system in chaos, and that can't happen. And respectfully, for those reasons, you need to reverse. Thank you, counsel. Thank you both. We'll take the case under advice.